GEORGE L. BROWN & another *vs.* ABBOTT LAWRENCE.

SAME *vs.* JESSE KINGSBURY.

SAME *vs.* MILTON GALE.

SAME *vs.* FITZHENRY HOMER.

A testator, having by his will devised to his son S. the rent or improvement of certain real estate, "he to receive the rent annually, or quarterly, (if the same should be leased or let,) during his natural life, and the premises to descend to his heirs," added a codicil, by which he repealed and revoked that part of his will, wherein any part of his estate real or personal was devised or bequeathed to his son S., and in lieu thereof, made a bequest in the following terms: "I do bequeath to my son S. only the income, interest or rent of any portion of my real or personal estate, as the case may be, so that no more than the income, interest or rent of any portion of my real or personal estate, and not the principal of said personal or fee of said real estate may come to the said S. my son, which, at his decease, it is my will, that the said real and personal estate shall then go to the legal heirs:" It was held, that by the terms of the will alone, the estate therein mentioned would have been devised in fee to S. and his heirs, either as a fee simple in him, according to the rule in Shelley's case, or as an estate for life in S., with remainder in fee to his heirs, according to the rule as modified in this state by *St.* 1791, *c.* 60, § 3; but that by the codicil, the devise in the will to S.. whether of a fee simple, or of an estate for life, with remainder in fee to his heirs, was wholly revoked, and an estate thereby devised to him for life, with vested remainder in fee to the legal heirs of the testator.

THESE were writs of entry, brought to recover four several lots of land, situated on the north side of North Market street, in Boston; and were submitted to the court together, upon the following agreed statement of facts: —

William Brown, late of Boston, deceased, being seized of the demanded premises in fee simple, died so seized, leaving a will dated April 26th, 1815, with a codicil dated May 30th, 1816, both of which were duly proved, approved, and allowed on the 15th of July, 1816. The testator left also four children and heirs at law, two sons and two daughters, namely, William Brown, Zebiah C. Tilden, (wife of Bryant P. Tilden,) Sarah Brown, and Samuel Livermore Brown. The last named was married on the 14th of November, 1819, and died on the 31st of January, 1831, leaving two children, George L. Brown, born February 6th, 1821, and Josiah Brown, born January 5th, 1823, who are the demandants in these actions

The demandants alleged, that under and by virtue of the will and codicil of William Brown, they became entitled, on the death of their father, to the demanded premises, in fee simple.

The tenants claimed title from the city of Boston, through mesne conveyances, under the quitclaim deeds of the above named children and heirs at law of William Brown, dated May 5th, acknowledged May 5th and 17th, and recorded June 18th, 1824. The tenants maintained, that under and by virtue of the will and codicil of William Brown, these grantors were enabled to pass, and by their deeds did pass, all the title to the demanded premises, which the testator had therein at the time of his death.

The premises in question are mentioned in the will as the estate which the testator purchased of Mr. Stoddard.

The testator, by his will, made the following provision for his youngest son, the father of the demandants: —

"For my youngest child and son, Samuel Livermore Brown, who was born of my last wife, Elizabeth Livermore, I make the following arrangement of property in my estate for him. The property of my first wife has been in some measure mingled in common stock, the property which might otherwise have descended to me by my last wife, Elizabeth, was after her decease conveyed by her father, by deed, and by a brother by will, to her only surviving child, (the said Samuel,) which was perfectly consistent with my approbation, and this property, being in land, is sufficient for several farms; and if the said Samuel should quit seafaring pursuits, which he has selected for his employment, and turn his attention to agricultural pursuits, he will not need any addition to his acres; but it may be necessary and convenient to have some annual income to aid him in his labor. Therefore, I give and bequeath to my son Samuel L. Brown the rent or improvement of my store, and wharf privilege situate on the northerly side of the town dock in Boston, he to receive the rent annually, or quarterly, (if the same should be leased or let,) during his natural life, and the premises to descend

to his heirs; this being the estate I purchased of Mr. Stoddard, reference to the records will give the bounds; also, I do hereby direct my son William to vest one thousand dollars in bank stock, or the stocks of this state or the United States, the interest of which, as it arises, to be paid by him, to the said Samuel during his life, and the stock to descend to the heirs of the said Samuel; this is to be advanced by the said William as some consideration for the difference in the value of the two stores."

The testator also directed that certain property, being the whole of his estate not otherwise disposed of, should be turned into money, and that the residue, after payment of his debts, should be divided into four equal parts, one for each of his children. In regard to Samuel's part, he gave the following directions: "But I do hereby direct my executor hereafter named to vest one half of the said Samuel's fourth part of this property in the stock of some approved bank in Boston, or in the stocks of this state or the United States, or in real estate, the dividend or rent to be paid by him to the said Samuel as it may arise, and the principal or premises to descend to his heirs; and the other half of this fourth part to be paid to the said Samuel in money, when collected, to stock his farm, or for other purposes."

The codicil was as follows: —

"Whereas my son Samuel has sold his two farms which were left to him, one by his late grandfather Livermore by deed, and the other by his uncle George Livermore by will, and whereas it appears he has relinquished every intention to agricultural pursuits, and is now absent at sea with a view to qualify himself for a seafaring life, and under these circumstances, considering it to be more for his interest and happiness, I do hereby repeal and revoke the part of my will wherein any part of my estate, real or personal, is devised or bequeathed to my son Samuel, therein named, and in lieu thereof do bequeath to my son the said Samuel, only the income, interest, or rent of said real or personal estate, as the case may be, so that no more than the income, interest, or

rent of any portion of my real or personal estate, and not the principal of said personal or fee of said real estate may come to the said Samuel, my son, which at his decease it is my will that the said real and personal estate shall then go to the legal heirs."

These causes were argued at the March term, 1848, by *N. Dow*, (with whom was *J. Bell*,) for the demandants, and by *P. W. Chandler*, city solicitor, (with whom was *C. P. Curtis*,) for the tenants.

The following opinion of the court was delivered at the same term : —

SHAW, C. J. The court are called upon, in the present case, to put a construction upon the will of the late William Brown, which, in some parts, it is difficult to understand. These suits are brought by George L. Brown and another, heirs of Samuel L., the youngest son of the testator. The demandants seek to recover a valuable piece of land, now a part of North Market street, and certain stores bounding thereon, constituting formerly a wharf and store, situated on the northerly side of the town dock. The premises demanded are a part of the land embraced in the great public improvement, made some years since by the establishment of the Quincy market, and the streets adjoining thereto, North and South Market streets. The city of Boston took a conveyance from the two sons and the two daughters of William Brown, then deceased, of whom Samuel, then living, was one ; and, after appropriating such portion of the estate as was necessary to the public improvement alluded to, they conveyed the residue, as store lots, to the several tenants, against whom these suits are brought, or to their predecessors from whom the tenants have derived title. Since that conveyance, Samuel L. Brown has deceased, leaving two children, his heirs at law, who are these demandants. They insist that the only estate, which their father took under the will, and which could and did pass by his deed, was a life estate ; and that they are entitled, as his heirs, to the estate in remainder or reversion, which accrued on the determina-

tion of his life estate. On the contrary, the tenants contend, that the deed of the four children and heirs at law and devisees of William Brown, who, it is admitted, was formerly owner of the estate in fee, and died seized thereof, made a good title in fee to the city, through whom the tenants derive title.

1. The first question is, whether the devise of the Stoddard estate to Samuel L. Brown, for life, "and the premises to descend to his heirs," is revoked by the codicil. Had the clause in the original will stood unaffected by the codicil, it is manifest, that the Stoddard estate would have been devised in fee to Samuel and his heirs, either as a fee simple in himself, according to the rule known as the rule in Shelley's case, or as an estate for life in Samuel, with remainder in fee to his heirs, according to the rule as modified in Massachusetts, by *St.* 1791, *c.* 60, § 3, (Rev. Sts. *c.* 59, § 9.) In either view, this "arrangement," as the testator calls it, for Samuel, would prevent the estate in question from going to the other children of the testator, unless, as the case might be, they should become the heirs of Samuel, he not then being married. It may be proper to remark, that the testator, in speaking of his son Samuel, describes him as his youngest child, and the only child of his last wife, and as having received a considerable amount of real estate from his maternal relatives.

The will was made in April, 1815, and the codicil in May, 1816, shortly before the testator's death.

The codicil relates wholly to the arrangement made in the will for Samuel. It begins by reciting, that the testator's son Samuel has sold his two farms, and appears to have relinquished every intention to agricultural pursuits, and is absent at sea, with a view to qualify himself for a seafaring life. Under these circumstances, considering it more for his (Samuel's) interest and happiness, the testator proceeds as follows : [Here the judge repeated the terms of the codicil, as inserted on the two pages preceding.]

These words are very strong ; they repeal and revoke that part of the will, in which any portion of the testator's estate

real or personal is devised or bequeathed to his son Samuel, and provide a substitution therefor, for reasons intimated in the recital. The codicil, therefore, revokes the devise of the Stoddard estate, given by the will, as construed by the statute of 1791, *c.* 60, § 3, to Samuel for life, with remainder to his heirs; it contains words not only revoking all that part of the will, which gave the Stoddard estate to Samuel, and giving him only the interest, income or rent thereof; but it contains strong negative terms, expressive of his intent, that no more than the income, interest or rent, and not the principal, of said personal or fee of said real estate, may come to Samuel, but that at his decease the latter should then go to the legal heirs. Perhaps the testator had not in his mind the precise technical distinction between a fee in Samuel, by the word "heirs" in common form, and a devise to him for life, and then to his heirs. This is the more probable, because, upon this distinction, he had by the will given the estate to Samuel in fee. But even if he did understand that distinction, and knew that a devise to Samuel, in terms, for his natural life, and at his decease to his heirs, was not a fee to Samuel, but would give a remainder to the heirs, he knew how to express that intent in the will, having in other parts of the will given property real and personal, in terms, to Samuel for life, and at his decease " to his heirs," or " to the heirs of said Samuel." When, therefore, the testator declares by the codicil, after revoking the devise, that the estate shall not go to Samuel in fee, but only the use and income of it, and then to the heirs, it manifests an intent, if not in express terms, that the estate is not to go to Samuel's heirs, as he had directed by the will, but to his own heirs. The terms of the codicil are too clear to admit of a different construction, and the court are of opinion, that the devise in the will to Samuel for his life, with remainder to his heirs, was wholly revoked by the codicil, as well in regard to the remainder as to the particular estate, and that in lieu thereof the arrangement contained in the codicil was substituted. We are then to look exclusively at the latter instrument to ascertain the title to the Stoddard estate.

2. The next question is, How did this estate pass by the codicil? It appears to us, that the testator, after declaring that the estate he had given to Samuel was not to go in fee, and giving him the rent of the same only, by providing, that at his decease, it should go to the legal heirs, intended his own heirs. By a well known rule of law, when the improvement of property described, or the entire use and benefit, or the entire rent, income and profits, where the land described is not already leased, is given to one for life, it is construed to be a freehold, and a grant or devise of the estate to the devisee for his own life. Taking these principles together, the court are of opinion, that the effect of the codicil was to give the Stoddard estate to the testator's son Samuel for his life, with remainder to his (the testator's) own heirs. The two sons and the two daughters, therefore, Samuel being one, each took a remainder in one fourth part of the estate, expectant upon the determination of Samuel's life estate.

It seems, therefore, to be quite clear, that the demandants have no color of right to more than one quarter; and, even as to a quarter, if Samuel's interest therein was a vested remainder, then, when he made his deed to the city, that interest passed by the deed. But as this point has not been fully argued, we desire to hear the counsel further on the subject.

In compliance with the suggestion of the court, these causes were again argued at the present term, upon the question, whether the demandants were entitled to claim any part of the demanded premises, by *N. Dow*, for the demandants, and by *P. W. Chandler*, city solicitor, (with whom was *B. R. Curtis*,) for the tenants.

SHAW, C. J. These causes came on to be heard again, upon the question, whether the demandants, children and heirs of Samuel L. Brown, are entitled to claim any part of the demanded premises.

It was decided at the last March term, after full considera-

tion, and for the reasons then given, that taking the will of William Brown in connection with the codicil and construing them together, the effect was to give his son Samuel L. Brown a life estate in the Stoddard estate, being the premises sued for in this action, with remainder to the testator's own heirs. It was then insisted, on behalf of the demandants, that, by the right of representation, they stood in the place of their father, one of the four children and heirs of William Brown, and that they together were entitled to take one quarter part of this estate, and consequently had a right to recover the same in this action.

The validity of this claim depends upon the question, whether the heirs of William, the testator, took a vested remainder, subject only to the life estate of Samuel; if they did, such remainder was an interest transmissible by deed, and, then, the deed of Samuel, executed in his lifetime, and after his father's decease, vested not only his life estate but his quarter part of the remainder in fee in the city of Boston, under whom the tenants hold.

A vested remainder is one that takes effect in interest and right immediately on the death of the testator, although it may not take effect, indeed, if it be a remainder, it cannot take effect in possession and enjoyment, until the death of the devisee for life, or other determination of the particular estate.

In the present case, the remainder being to the testator's own heirs, these were ascertained at the moment, and by the event of the testator's decease, and *eo instanti;* and by the same event, the will took effect. There is no contingency as to who is to take ; and the remainder is to take effect upon the decease of the tenant for life ; an event regarded by the law as a certain one; the time only of its happening being contingent. A present capacity of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant, before the estate limited in remainder determines, universally distinguishes a vested remainder from one that is contingent. In general, the law favors that construction, which holds **a**

remainder vested, rather than that which considers it contingent, when the question is doubtful.

This subject was much considered in a very recent case, in which the question was examined on the authorities. In that case, it was held, that when a bequest is made to one or more for life, remainder to the testator's heirs, or next of kin, or such persons as would take his estate by the rules of law, if he had died intestate, the bequest is to those, who are heirs or next of kin, at the time of his decease, &c. *Childs* v. *Russell*, 11 Met. 16. A similar doctrine, we think, was held to govern in a recent English case. *Doe* v. *Prigg*, 8 B. & Cr. 231.

The present appears to us to be a very clear case of a vested remainder ; the devise depending upon no contingency affecting the right, but only upon one affecting the time when it should take effect *in possession.* There was no time when there was not, or when there must not be, by force of the will and the law governing its application, a person in *esse* having a capacity to take whenever the possession should become vacant.

If it could be maintained, in the present case, that the testator did not intend, by the terms "legal heirs," to create a remainder, but simply to intimate his understanding, that after the death of Samuel, the estate would go to the heirs at law, by inheritance, the result would be the same. In such a case, the four children, including Samuel, would take a reversion in fee, that is, they would take the estate, subject only to Samuel's life interest : and this would be a vested interest, transmissible by deed or by inheritance. Then the quarter in question would have passed by Samuel's deed.

If it were argued, that the strong negative words in the codicil indicate the intention of the estator, to exclude Samuel from taking any part of the real estate beyond a life interest, either by the will or by inheritance, the answer as to the latter is, that when one makes a will, and gives an estate for life, without making any disposition of the residue, he dies intestate as to such residue, and his will has no power

to control the law which directs its descent. But the answer to both suggestions is, that if such a forced construction as to exclude Samuel could possibly be put on the words of the will, then, by a necessary consequence, the words "legal neirs" must mean "my legal heirs other than Samuel"; and on that construction, the whole of the expectant estate, whether a remainder or reversion, vested in the other three, and passed by their deed to the city.

Indeed, it seems to us, that the decision on the former hearing, holding this to be a devise to Samuel for life, with remainder, not to his heirs, but to the heirs of the testator, is decisive against the claim of these demandants. They cannot make themselves heirs of the grandfather, because their father, through whom they must claim, was living at the time of their grandfather's decease; and it is only when a son or daughter dies before the father, leaving children, that such children are heirs of a grandfather, or other more remote ancestor. These children were not born, when the testator died; their father was then his heir, and became a new stock of inheritance to these demandants. If the estate vested in him, he had a capacity to alienate it, and did alienate it, by his deed to the city; if the estate did not vest in him, then nothing came to these demandants, as his heirs. In any view, in which we can consider this will, the court are of opinion, that the demandants cannot recover any part of the estate for which this action is brought.